**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DAVID T. K.,                          )
                                      )
               Plaintiff,                 )      Case No. 1:23-cv-4961
     v.                              )
                                      )      Magistrate Judge Jeannice W. Appenteng
FRANK BISIGNANO,                      )
Commissioner of Social Security,      )
                                      )
               Defendant.                 )

**MEMORANDUM OPINION AND ORDER**

Plaintiff David T. K. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and plaintiff moved for summary judgment. After review of the record and the parties' respective arguments, the Court denies plaintiff's motion and affirms the denial of benefits.

**BACKGROUND**

Plaintiff applied for DIB benefits on January 6, 2017 alleging disability since April 16, 2012 due to a back injury, failed back surgery, pseudoarthrosis, osteochondrosis at L3-L4, degenerative disc disease, narrowing of the spinal nerves, nerve pain, depression, and adjacent level degeneration. Administrative Record ("R.") 209, 247. Born in November 1966, plaintiff was 45 years old as of the alleged onset date, making him a younger person (under age 50). 20 C.F.R. § 404.1563(c);

R. 209. By the December 31, 2017 date last insured, plaintiff had changed age categories to a person closely approaching advanced age (age 50-54). 20 C.F.R. § 404.1563(d); R. 209.

Plaintiff obtained a GED and lives in a house with his wife and dogs. R. 36, 248, 859. He worked as a field service technician for several years beginning in January 2005 but suffered a workplace back injury on April 12, 2012. R. 248, 710. As a result of that injury, plaintiff stopped working on April 16, 2012 and has not engaged in substantial gainful activity since that date. R. 248.

The Social Security Administration denied plaintiff's application at all levels of review and he appealed to the District Court. On July 14, 2022, the Court reversed and remanded the case to the Commissioner for further proceedings, finding that the assigned administrative law judge ("ALJ") needed to "either incorporate non-exertional restrictions into the RFC [residual functional capacity] that account for Claimant's mild limitations in concentration, persistence, or pace, and adapting and managing himself, or explain why such limitations are unwarranted." R. 913. *See also David K. v. Kijakazi*, No. 20 CV 1743, 2022 WL 2757695, at *5 (N.D. Ill. July 14, 2022). On November 21, 2022, the Appeals Council vacated the final decision of the Commissioner and remanded the case to the ALJ "for further proceedings consistent with the order of the court." R. 923. The ALJ held a supplemental hearing on May 10, 2023 and heard testimony from plaintiff,

who was represented by counsel, and from vocational expert Sara Gibson (the "VE").[1] R. 853-76.

On May 23, 2023, the ALJ found that plaintiff's lumbar degenerative disc disease is a severe impairment, but that it does not alone or in combination with plaintiff's non-severe mental impairments meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 833-37. After reviewing the evidence, the ALJ concluded that plaintiff has the RFC to perform a reduced range of light work with various postural, manipulative, and environmental restrictions. R. 837-43. The ALJ accepted the VE's testimony that a person with plaintiff's background and this RFC could not perform plaintiff's past relevant work, but could perform a significant number of other jobs available in the national economy. R. 843-44. As a result, the ALJ concluded that plaintiff was not disabled at any time from the alleged disability onset date through the December 31, 2017 date last insured. R. 844-45. That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of his request for reversal or remand, plaintiff argues that the ALJ (1) failed to comply with the Court's order to either include mental restrictions in the RFC or explain their omission, and (2) erred in finding him capable of

---

[1] The hearing was held telephonically due to the COVID-19 pandemic.

performing light work.[2] For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence.

## DISCUSSION

### A.    Standard of Review

A claimant is disabled within the meaning of the Social Security Act if he is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether [the claimant] has a severe impairment or a combination of impairments that is severe; (3) whether [the claimant's] impairments meet or equal any impairments listed as conclusively disabling; (4) whether [the claimant] can perform . . . past work; and (5) whether [the claimant] is capable of performing any work in the national economy." *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021) (citing 20

---

[2] Arguments not specifically addressed in this opinion were not reasonably developed and have been waived. *See, e.g., Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

C.F.R. § 404.1520(a)-(g)). If the claimant meets his burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Id.*

In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (quoting *Gedatus*, 994 F.3d at 900). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). "[S]ocial-security adjudicators are subject to only the most minimal of articulation requirements," and ALJs need only provide "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1053-54 (internal quotations omitted) (in "shorthand terms," an ALJ must build a "logical bridge from the evidence to his conclusion"); *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

## B.    Analysis

### 1.    Mental Impairments

Plaintiff argues that the case must be reversed or remanded because the ALJ ignored the Court's directive to incorporate mental restrictions in the RFC or explain why such limitations are unwarranted. Dkt. 18 at 8-12; Dkt. 24 at 2. This

argument fails because the ALJ articulated why plaintiff does not require mental limitations in the RFC, and that decision is supported by substantial evidence.

The ALJ found that plaintiff has a mild limitation in concentration, persistence, or pace but no limitation in any other area and no related functional restrictions. R. 835, 841. In reaching this conclusion, the ALJ gave great weight to the opinions from state agency psychological reviewers David Voss, Ph.D., and Joseph Mehr, Ph.D., who both agreed that plaintiff does not have any severe mental impairments that require accommodation in the RFC. R. 90, 113, 836. Plaintiff disagrees with this assessment but does not identify any physician of record who reached a contrary conclusion or imposed specific non-exertional limitations that the ALJ disregarded. *See Tutwiler v. Kijakazi*, 87 F.4th 853, 860 (7th Cir. 2023) ("The lack of an opposing medical opinion [imposing greater restrictions than those the ALJ found in his decision] makes it difficult for us to find that the ALJ misjudged the evidence so significantly as to warrant reversal.").

The ALJ also provided a detailed discussion of plaintiff's medical records, none of which reflect deficits in mental functioning. Though plaintiff never received psychological treatment of any kind, clinical notes routinely documented normal mood, normal thought content, and adequate attention and concentration, with no evidence he had problems caring for himself independently. R. 419, 629, 631, 676-77, 822, 835-36, 1193, 1198, 1249, 1256, 1276, 1353, 1356, 1365, 1388. Plaintiff objects that the ALJ placed too much emphasis on "normal brief mental status examinations." Dkt. 18 at 9. It is true that an ALJ "may not selectively discuss

portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability." *Gerstner v. Berryhill*, 879 F.3d 257, 262 (7th Cir. 2018). Here, however, plaintiff fails to identify any abnormal mental exams at all, much less ones the ALJ ignored. *See Weaver v. Berryhill*, 746 F. App'x 574, 578-79 (7th Cir. 2018) ("It was [plaintiff]'s burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work.").

Plaintiff argues that the ALJ still erred by failing to consider the impact his pain and fatigue would have on his ability to sustain full-time work, or his testimony that he can only pay attention for 15-20 minutes at a time. Dkt. 18 at 10-12. Not so. The ALJ acknowledged plaintiff's complaints and fairly concluded that they were unsupported by the normal exam findings cited above, as well as plaintiff's own denials to his treaters that he was experiencing mental problems. R. 518, 628, 630, 711, 834-36, 838-39. *See Thorps v. Astrue*, 873 F. Supp. 2d 995, 1006 (N.D. Ill. 2012) (citing *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007)) ("[A] patient's subjective complaints are not required to be accepted insofar as they clashed with other, objective medical evidence in the record."). Plaintiff finds it significant that during an April 11, 2017 consultative psychological evaluation with Lynette Schultz, Psy.D., he reported feelings of sadness, hopelessness, helplessness, frustration, lethargy, apathy, and anhedonia that increase with stress. R. 676. As the ALJ noted, however, Dr. Schultz's objective mental exam that day revealed

7

adequate concentration and intact memory. R. 677, 836. Moreover, Dr. Schultz did not identify any "vocationally-relevant limitations" that the ALJ overlooked. R. 836.

Further undermining plaintiff's subjective complaints is evidence that he engaged in activities that the ALJ viewed as requiring significant focus and energy such as handling money, reading, driving, managing his medical care, attending church, shopping, visiting with friends, and engaging in self-care. R. 834-35. Plaintiff insists that these activities "do[ ] not matter," Dkt. 18 at 11, but "it is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated." *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016). And contrary to plaintiff's assertion, the ALJ did not equate his ability to engage in the activities with an ability to work full-time. Dkt. 18 at 11. Rather, the ALJ "used [plaintiff's] reported activities to assess the credibility of h[is] statements concerning the intensity, persistence, or limiting effects of h[is] symptoms consistent with the applicable rules." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Plaintiff has not demonstrated that this assessment was "patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022) ("As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong.").

Viewing the record as a whole, the ALJ provided good reasons for finding that plaintiff's non-severe mental impairments do not result in any related functional limitations. *See Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (courts

8

"apply a very deferential standard of review to the ALJ's decision"). "Although plaintiff may disagree with how the ALJ weighed the evidence and the conclusions the ALJ drew from that evidence, this Court does 'not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's.'" *Bridget T. M. v. O'Malley*, No. 21 CV 50290, 2024 WL 4347193, at *2 (N.D. Ill. Sept. 30, 2024) (quoting *Gedatus*, 994 F.3d at 900). The ALJ fully complied with the Court's remand order and plaintiff's request to remand the case for further consideration of his mental RFC is denied.

### 2. Physical RFC

Plaintiff also argues that the case must be reversed or remanded because the ALJ erred in finding him capable of performing a reduced range of light work. Dkt. 18 at 12-15; Dkt. 24 at 3-4. A claimant's RFC is the maximum work that he can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. "[T]he responsibility for the RFC assessment belongs to the ALJ, not a physician, [but] an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Bronwen M. v. Kijakazi*, No. 22 CV 50153, 2023 WL 6388207, at *2 (N.D. Ill. Sept. 29, 2023) (quoting *Amey v. Astrue*, No. 09 CV 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012)).

The ALJ found that plaintiff is capable of light work with the following restrictions: frequent climbing of ramps and stairs; occasional climbing of ladders, ropes, and scaffolding; frequent balancing, kneeling, crouching, and crawling; occasional stooping; frequent pushing and pulling with the upper and lower

9

extremities; and no concentrated exposure to unprotected heights. R. 837. The ALJ supported this assessment with a detailed recitation of all the record evidence. R. 838-41.

Plaintiff suffered a workplace injury in April 2012 causing lower back pain. R. 839. An examination on April 16, 2012 revealed a marked degree of lumbosacral paravertebral spasm on the right but no weakness. R. 419, 839. Plaintiff had an MRI of the lumbar spine on May 1, 2012, which showed an annular tear of the posterior L4-L5 disc with protrusion and a disc bulge at L3-L4 but no significant neural foraminal stenosis or central canal stenosis. R. 341, 838-39. Subsequent imaging revealed degenerative disc disease at L3-L4 and L4-L5 with no areas of neural impingement. R. 334, 839-40. Plaintiff received conservative treatment, including physical therapy, home exercise, and steroid injections. R. 315, 436, 440, 487. When those measures proved insufficient to resolve plaintiff's symptoms, orthopedic surgeon Anthony Rinella, M.D., recommended surgical intervention. R. 593-94, 840.

In May 2013, plaintiff had transforaminal lumbar interbody fusion surgery at L4-L5. R. 332, 398-401, 591-92, 840. Plaintiff responded well to the surgery and was released to sedentary work in August 2013. R. 323. By December 2013, plaintiff had been cleared for medium work with periodic lifting restrictions following reports of pain (and one instance where he was briefly off work in April 2014 for additional imaging). R. 433, 435, 440, 443, 446, 447, 456, 488, 535, 840. Tests and exams throughout 2014, 2015, and 2016 generally showed no ongoing nerve root

compression, normal range of motion, and good strength, though plaintiff also exhibited lower back tenderness and complained of leg numbness and tingling, mostly in his left toes. R. 517, 527, 557, 596, 609, 641, 648-49, 689-90, 693, 840. Treating physicians disagreed as to whether plaintiff should undergo revision surgery, but in late 2016, Dr. Karsten Ritter-Lang determined that the procedure was warranted to prevent "chronification of [plaintiff's] symptoms." R. 459, 517, 531-32, 596, 609, 840.

On February 24, 2017, plaintiff had revision surgery in Germany (the procedure was not yet approved in the United States). R. 43, 44, 654, 695, 840. His pain improved and he received minimal additional treatment thereafter. R. 669, 671, 695, 697-98, 701, 800, 802, 840. In fact, plaintiff was feeling so good that he decided not to attend a consultative physical examination and indicated that he no longer wished to pursue his disability claim. R. 68-69, 111, 840. Moreover, the record reflects that plaintiff continued to do well for several years after the December 31, 2017 date last insured. In June 2018, he denied experiencing any musculoskeletal problems and even reported being a "professional Golf player." R. 804, 841, 1152, 1154. In June 2019, plaintiff told his pain management specialist that he had been "doing well until recently" when he started having some left hip pain. R. 841, 1119. And in March 2020, plaintiff stated that he was managing his pain with home exercises and medication. R. 841, 1123.

Plaintiff fails to address most of these medical records or articulate how they demonstrate that prior to December 31, 2017 he was incapable of performing light

11

work as the ALJ determined. Nor does plaintiff identify any physician who found him to have a more restricted RFC. *Tutwiler*, 87 F.4th at 860. Instead, plaintiff focuses on his own testimony that he has difficulty walking due to pain, cannot stand for more than 20 minutes, cannot sit for more than an hour, must alternate positions frequently throughout the day, and needs to lie down often. Dkt. 18 at 14-15 (citing R. 61-67). The ALJ addressed this evidence but found it unsupported by the objective record and inconsistent with plaintiff's activities of daily living. R. 838-40. *Thorps*, 873 F. Supp. 2d at 1006. Plaintiff's only response is to reiterate his objection that the ALJ erred in discussing his daily activities. Dkt. 18 at 14-15. As noted earlier, however, it was proper for the ALJ to consider plaintiff's ability to engage in light cleaning, dishwashing, laundry, shopping, cooking, fishing, and driving, as one factor supporting the RFC and undermining plaintiff's allegations of severe limitations. R. 840. *Alvarado*, 836 F.3d at 750. And again, the ALJ did not equate plaintiff's performance of the activities with an ability to work. *Burmester*, 920 F.3d at 510.

This Court will not reweigh evidence or substitute its judgment for the ALJ's determination. *Warnell*, 97 F.4th at 1052-53. Viewing the record as a whole, the ALJ reasonably concluded that plaintiff is capable of a reduced range of light work and that decision is supported by substantial evidence. *See Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (substantial evidence is "not a high threshold"). Plaintiff's request to remand the case for further consideration of this issue is denied.

## CONCLUSION

For the reasons stated above, plaintiff's motion to remand the case [18] is denied. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED.**

_____
**Jeannice W. Appenteng**
Date: 5/1/2026          **United States Magistrate Judge**